**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

(HONORABLE LYNNE A. SITARSKI)

**UNITED STATES OF AMERICA,**
*Plaintiff.*

v.

**DANIEL SHAW-AMOAH**

*Defendant*.

Case No. 2:26-cr-00062-LAS

**DEFENDANT'S SENTENCING MEMORANDUM**

Roy D. Prather (Bar No. 306803)
Evynn M. Overton (*pro hac vice*)
Beveridge & Diamond, PC
201 N. Charles Street
Suite 2210
Baltimore, MD 21201
(410) 230-1335
rprather@bdlaw.com
eoverton@bdlaw.com

Alyse I. Adamson (*pro hac vice*)
Beveridge & Diamond, PC
1900 N Street NW
Suite 100
Washington, DC 20036
(202) 789-6076
aadamson@bdlaw.com

Counsel for Defendant

## I. INTRODUCTION

The case before the Court is a classic misdemeanor probation matter. Daniel Shaw-Amoah was obliged to comport with the statutory requirements of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., and its implementing regulations, 40 C.F.R. pts. 150–89, and recognizes now that his misdemeanor failure to do so was irresponsible. He accepts responsibility and apologizes for this failure, and has come to understand the reasons for and importance of the regulatory structure governing pesticides in the United States. While the facts presented in the plea agreements are true, and Mr. Shaw-Amoah does not dispute them, additional context is necessary to explain how those facts came to be, and to provide a full picture of Mr. Shaw-Amoah for the Court's consideration. Given the circumstances surrounding Mr. Shaw-Amoah's acceptance of responsibility, remorse, and cooperation with the government, the most just sentence for him is a one (1) year period of probation.

## II. LEGAL BACKGROUND

The U.S. Environmental Protection Agency ("EPA") closely regulates the production, distribution, and sale of pesticides under FIFRA. Relevantly here, it is unlawful for any person to distribute or sell a pesticide that is not first registered with EPA. 7 U.S.C. §§ 136a(a) (registration), 136j(a)(1)(A) (unlawful acts). Further, under 7 U.S.C. § 136*l*(b)(1)(B), a person who knowingly distributes or sells a pesticide that is not first registered with the EPA is subject to criminal penalties of up to a twenty-five-thousand-dollar ($25,000) fine and/or one (1) year imprisonment. The term "to distribute or sell" means "to distribute, sell, offer for sale, hold for distribution, hold for sale, hold for shipment, deliver for shipment, release for shipment, or receive and (having so received) deliver or offer to deliver." 7 U.S.C. § 136(gg).

## III. DANIEL SHAW-AMOAH'S STORY

### A. Introducing Mr. Shaw-Amoah

Mr. Shaw-Amoah grew up in an orphanage located in Tema, Ghana, and remained there until 2006 when he left to pursue secondary school education. He met his current wife, Anna Shaw-Amoah, in 2011 when she was studying abroad in Ghana. Mr. Shaw-Amoah entered the U.S. on July 3, 2015 on a K1 Fiancé visa, and married Mrs. Shaw-Amoah in New York on August 23, 2015. Mr. Shaw-Amoah naturalized as a U.S. citizen in June, 2019.

Mr. and Mrs. Shaw-Amoah now live in a home located in Lansdowne, Pennsylvania, and have two young children, ages five (5) and three (3) who they both equally love and care for, as well as a dog and two cats. Mr. Shaw-Amoah also serves a vital role in his community and has close family ties. *See* Exhibit 1 (Letters of Support from Richard K. Shaw, Mr. Shaw-Amoah's Father In-Law; Laura Shaw, Mr. Shaw-Amoah's Mother-In-Law; and Clara H. Salzberg, Mr. Shaw-Amoah's Sister-In-Law).

Since coming to the U.S., Daniel Shaw-Amoah built his business, African Delights, LLC, around his passion for the food and culture of his native country, Ghana. What began as a small business operated out of his garage and basement developed into a warehouse and online business serving as a central point for imports from West Africa. African Delights, LLC serves as both Mr. and Mrs. Shaw-Amoah's primary source of income and supports their young family.

### B. The Offense

On May 9, 2023, Daniel Shaw-Amoah sold ninety-six (96) one-hundred (100) milliliter bottles of an insecticide, namely Sniper DDVP to an undercover EPA CID agent. Sniper DDVP is an insecticide containing dichlorvos (DDVP) which is used on crops, animals, and in pest strips. Although Sniper DDVP is lawfully sold in Mr. Shaw-Amoah's native country, Ghana for agricultural and industrial pest control, it is not registered with the EPA in the U.S.. Mr. Shaw-

Amoah was charged with a single count of a Federal Insecticide, Fungicide and Rodenticide Act (FIFRA) violation under 7 U.S.C. §§ 136j(a)(1)(A) & 136*l*(b)(1)(B).

Mr. Shaw-Amoah does not deny that he sold the product. However, at the time of sale he did not appreciate the severity of the transaction. While Mr. Shaw-Amoah was aware that the product has entered the United States unlawfully, he did not understand that distributing or selling Sniper DDVP would be a FIFRA violation. He accepts responsibility and apologizes for the failure of judgment that brought him to this violation. He now also understands FIFRA's vital importance to protect the public from pesticides that could cause unreasonable risk to human health or the environment, as well as the need to seek the assistance of counsel to ensure that any business he might engage in in the future complies with all relevant laws.

**IV. SENTENCING FACTORS**

Section 3553 requires that the Court, "in determining the particular sentence to be imposed, shall consider" various factors, including the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. The sentence should also reflect the seriousness of the crimes, promote respect for the law, deter future crime, and provide just punishment. 18 U.S.C. § 3553(a)

Mr. Shaw-Amoah understands the seriousness of his violation of FIFRA and accepted early responsibility for it. Given the circumstances, a custodial sentence is not warranted. His misdemeanor was non-violent, and his personal background, as well as the context leading up to that misdemeanor, present several mitigating factors which make a short-term probation appropriate. For Mr. Shaw-Amoah, the applicable sentencing factors demonstrate that the only just sentence is one (1) year probation.

**A. The Advisory Guidelines Support a Probationary Sentence**

The applicable Guidelines support a noncustodial sentence. Under our calculations, we believe the applicable total offense level under the Guidelines to be four (4). Appendix A of the Guidelines Manual directs offenses under 7 U.S.C. § 136l to U.S.S.G. § 2Q1.2, which establishes a base offense level of eight (8) for offenses involving the mishandling of pesticides. U.S.S.G. § 2Q1.2(a). No specific offense characteristics under § 2Q1.2(b) apply here. Mr. Shaw-Amoah also qualifies for a two-level reduction for acceptance of responsibility under § 3E1.1(a), reducing his offense level to six (6).

Mr. Shaw-Amoah has no criminal history points and satisfies the criteria for the adjustment available to certain zero-point offenders under U.S.S.G. § 4C1.1. That provision directs the Court to reduce the offense level by an additional two levels where, among other things, the defendant has no criminal history points and the offense did not involve violence, serious bodily injury, substantial financial hardship, a weapon, or an aggravating role. U.S.S.G. § 4C1.1(a). Application of that adjustment results in a total offense level of four (4).

With a total offense level of 4 and Criminal History Category I, Mr. Shaw-Amoah's advisory Guidelines range is zero (0) to six (6) months, which falls within Zone A of the Sentencing Table. U.S.S.G. Ch. 5, Pt. A. In Zone A, imprisonment is not required and a sentence of probation is expressly authorized. U.S.S.G. §§ 5B1.1(a)(1), 5C1.1(b). Indeed, the Guidelines specifically recognize that where, as here, a defendant receives the § 4C1.1 zero-point adjustment and falls within Zone A or B, "a sentence other than a sentence of imprisonment . . . is generally appropriate." U.S.S.G. § 5C1.1 cmt. n.9.

The Guidelines also authorize the one-year term of probation Mr. Shaw-Amoah requests. Because his total offense level is below six (6), § 5B1.2 permits a probationary term of up to three (3) years, without prescribing a minimum term. U.S.S.G. § 5B1.2(a)(2). Accordingly, a

sentence of one (1) year of probation falls squarely within the sentencing options contemplated by the advisory Guidelines and is consistent with the Commission's recognition that a noncustodial sentence is generally appropriate for qualifying zero-point offenders like Mr. Shaw-Amoah.

**B. Daniel Shaw-Amoah Understands the Seriousness of his Offense**

Mr. Shaw-Amoah now knows much that he did not in 2023. After the initiation of this case, Mr. Shaw-Amoah quickly retained experienced FIFRA counsel. He has since learned not only that he had violated FIFRA and that the government takes such violations seriously, but the important public health and environmental protection that FIFRA provides. And the more he learned, the more he understood the importance of understanding and complying with the legal frameworks that govern a business *before* offering a product or service to the public. To that end, Mr. Shaw-Amoah has started independently studying business and environmental law. In short, Mr. Shaw-Amoah recognizes the seriousness of his offense, and accepts full responsibility for it. He has expressed deep remorse for his actions and presents no risk of repeated misconduct.

**C. Mitigating Factors in Mr. Shaw-Amoah's Character and History**

Numerous mitigating factors counsel against a severe sentence for Mr. Shaw-Amoah. In particular, a custodial sentence is unnecessary to promote respect for the law, deter future crime, or provide just punishment to him.

As detailed above, Mr. Shaw-Amoah has dedicated himself to his community's social and physical improvement. He is a financial and spiritual rock for his young family, including his wife, five-year-old son, and three-year-old daughter. He works long hours for his family which includes strenuous physical labor as well as sales calls, marketing promotions, and general business management. He is a coach for a Philadelphia amateur soccer league, which just won

the league title. He launched and—despite repeated failures—never gave up on an innovative business that he believed could serve an unmet need in Pennsylvania. He never sought to break the law, nor to disregard it, though he now recognizes where he pushed past FIFRA's bounds and takes full responsibility for doing so. Mr. Shaw-Amoah presents no danger to the community, nor any risk of recidivism.

He has taken this experience deeply to heart, and now understands not only the importance but the necessity of working with counsel when developing future business ideas to ensure he remains in full compliance with the law. Looking forward, Mr. Shaw-Amoah hopes to continue working in the warehousing sector, which he knows well, with a newfound appreciation for the law.

**D. A Short Period of Probation is Warranted**

Mr. Shaw-Amoah's conduct throughout the pendency of this case demonstrates that an extended period of supervision is unnecessary. He has been on pretrial release since April 2026 and has remained fully compliant, without any further involvement with the criminal justice system—including during the period before he entered his plea. His conduct over these months provides concrete evidence that he does not present a meaningful risk of recidivism and does not require continued oversight to ensure compliance with the law. Lengthier periods of supervision may be appropriate where there is a demonstrated need for continued monitoring, treatment or rehabilitation, structured accountability, or protection against a meaningful risk of reoffending. None of those concerns are present here. Given Mr. Shaw-Amoah's sustained compliance, the length of time he has already been subject to the restrictions and oversight associated with this case, and the absence of any indication that further supervision would serve a rehabilitative or public-safety purpose, a short period of probation is sufficient.

## V. SENTENCING RECOMMENDATION

For the reasons set forth above, Mr. Shaw-Amoah respectfully requests that the Court impose a sentence of **one (1) year of probation and no term of incarceration**.

That sentence appropriately accounts for both the seriousness of Mr. Shaw-Amoah's offense and the substantial mitigating circumstances presented here. Mr. Shaw-Amoah accepts responsibility for his conduct and understands that he failed to comply with a regulatory scheme designed to protect public health and the environment. He has expressed genuine remorse, and used the more than three years since the conduct at issue to educate himself and ensure that he does not repeat his mistake. During that same period, he has continued to support his wife and young children, operate his business, contribute to his community, and live without further legal trouble.

A one-year period of probation appropriately reflects the seriousness of the offense while recognizing that incarceration is unnecessary. Mr. Shaw-Amoah does not present a danger to the community, and nothing in his history or conduct suggests that a custodial sentence is necessary to deter him from future misconduct. To the contrary, the investigation, prosecution, guilty plea, and resulting conviction have already impressed upon him the seriousness of his obligations under federal law. A year of probation will provide a meaningful period of court supervision while allowing him to continue supporting his family and operating his lawful business.

Most importantly, that result accords with the Guidelines themselves. Per our calculations, Mr. Shaw-Amoah is a zero-point offender with a total offense level of four (4) and an advisory range of zero (0) to six (6) months. The Guidelines expressly authorize probation and recognize that a non-imprisonment sentence is generally appropriate for a qualifying zero-point offender in Zone A. See U.S.S.G. §§ 4C1.1, 5B1.1(a)(1), 5C1.1(b) & cmt. n.9. In light of those Guidelines, Mr. Shaw-Amoah's acceptance of responsibility, his history and

characteristics, and the nature and circumstances of this misdemeanor offense, a sentence of one year of probation is sufficient, but not greater than necessary, to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

Dated: September 10, 2026

Roy D. Prather (Bar No. 306803)
Evynn M. Overton
Beveridge & Diamond, PC
201 N. Charles Street
Suite 2210
Baltimore, MD 21201
(410) 230-1335
eoverton@bdlaw.com

Alyse I. Adamson
Beveridge & Diamond, PC
1900 N Street NW
Suite 100
Washington, DC 20036
(202) 789-6076
aconstantinide@bdlaw.com

Counsel for Defendant

# EXHIBIT 1

Friday, September 4, 2026
Re: testimonial statement in support of Daniel Shaw-Amoah

The Honorable Lynne A. Sitarski
U.S. Magistrate Judge

This note is concerning the legal matter before you involving my son-in-law Daniel Shaw-Amoah. I have known him for thirteen years and seen him in a number of roles – husband to my daughter Anna, father to two of my grandchildren Ricky (5 years old) and Dora (3), member of our family, businessman and entrepreneur, and active member of the community. I hope that my perspectives, below, warrant consideration in your courtroom.

As you know, Daniel did some work that was illegal and was apprehended accordingly. He is well aware of those wrongs that he should never have even considered doing. While there is no way for him to reverse history, it is my understanding that he has been contrite, rueful of what happened, and proactively cooperating with authorities to bring full force to bear on shutting down the sources and other perpetrators.

The illegal activity took place several years ago. When our immediate family speaks of Daniel, it's based on what he's done since. My daughter Anna and he are a truly loving couple, never far apart. He is an exemplary father to his two children and at the ready as they develop into strong youth with moral compass. Our four married daughters, who have blessed us with nine grandchildren, see Daniel as a great husband, father and uncle whom they eagerly trust to care for their children. From a business perspective, Daniel has taken the stereotypical entrepreneurial path of starting a small business in a garage and basement. Incredibly hard work, transformative decisions, and negotiation have developed it to the point that his business is starting to take off as a major success. In the multi-year course of this work, he has developed a strong reputation in the grocer/restaurant community along the central I-95 corridor and Pennsylvania; increased that market's product lines with lower-priced goods; and, recently, set up an intriguing partnership with his warehouse and online business serving as a central point for imports from West Africa. This has all been done while developing warehousing and online facilities that would otherwise not be available to his community. Oh… and may I mention, his Philadelphia amateur league soccer team just won the league title: pushing 37 but still showing up the youngsters.

While Daniel's past errors must be confronted, please consider the positives of his amazing journey as you determine disposition of his case.

Sincerely,

*Richard K. Shaw*

Richard K. Shaw, Ph.D. (retired)
754 Switchman Road
Media, PA 19063
Cell phone (908) 512-6383

PENNSYLVANIA STATE
**CONSTABLE** [redacted]

***Constable Laura Shaw***
Delaware County
Mobile: 484-257-9098
Cert #B004912

The Honorable Lynne A. Sitarski:

Your Honor,

My son-in-law Daniel Shaw-Amoah stands before you as a repentant man. I urge you to treat him with mercy.

When I talk to Daniel about this case, it is clear to me that he understands the seriousness of the crime; he understands that what he did was wrong; he knows that he could ruin the life he has built with our daughter, Anna, their two young children, and our close-knit family. I observe his working constantly to repair the damage he has done to his relationships. I cannot imagine that he would do anything in the future to put his freedom – or his family – at risk.

Daniel is an integral part of our family. He runs a business with Anna which is the sole source of income for their family of four. While Anna brings ecommerce expertise to the business, she could not keep the business running without his knowledge of the products and his salesmanship. He is a beloved father to his children and shares equally in the duties of parenting. He is a great help to my husband with things around our home which my husband is no longer capable of doing – especially when a ladder or heavy lifting are required.

As an officer of the law, I interact with repeat offenders on a daily basis. I am confident that Daniel has the desire and family support he needs to stay out of trouble in the future.

Respectfully,

Laura Shaw, PSC

September 6, 2026

To This Honorable Court:

I was devastated for my brother-in-law, Daniel, when I learned that he was being criminally charged for illegal sales he made as part of his business. My mind flashed to his wife (my sister) and their two young children; Daniel is a committed father and husband. I also ached for Daniel himself, an immigrant who built a small business around his passion for the foods and culture of his native country of Ghana.

And now, over a year later, Daniel has fully admitted his wrongdoing; he has started to make amends; and he has changed his life to ensure that he will not make the same bad choices again. He works long hours at his business: strenuous physical work punctuated by sales calls and marketing promotions. He is a jobs creator, a family provider, a taxpayer, a commerce contributor—in short, all we wish for our nation's children and new citizens.

In my 15 years as a prosecutor—first as an Assistant District Attorney in New York and now as an Assistant State's Attorney and Chief of the Post Conviction Litigation Unit at the Baltimore City State's Attorney's Office—I've learned quite a bit about recidivism and justice. Applying professional lessons to one's own family is challenging; but I can't help but see qualities in Daniel which, in my professional experience, lower the chances of recidivism and mitigate his risk to the community.

Through this experience, Daniel learned much about the American legal system. He sees that what he did was not only illegal, but destructive of the life he has built and his family, whom he deeply loves. He is wiser and understands the unacceptable risks of illegal trade to his successful, growing business. I have always been proud of him, and I have never been prouder than now because he has taken these lessons to heart. He has a large, loving family network—including me—to give him the support he needs to succeed. In short, his community and family would miss him dearly if he went to prison, and it would not make anyone safer or more secure.

I respectfully ask, therefore, that This Honorable Court impose a minimum sentence without prison time.

Sincerely,

Clara H. Salzberg